1  William A. Levin, California State Bar No. 98592
   Timothy F. Pearce, California State Bar No. 215223
2  LEVIN SIMES KAISER GORNICK, LLP
   wlevin@lskg-law.com
3  tpearce@lskg-law.com
   44 Montgomery Street, 36th Floor
4  San Francisco, California 94104
   Telephone: (415) 646-7160
5  Facsimile: (415) 981-1270

6
   Fletcher V. Trammell, Texas State Bar No. 24042053
7  BAILEY PERRIN BAILEY
   ftrammell@bpblaw.com
8  440 Louisiana Street, Suite 2100
   Houston, Texas 77002
9  Telephone: (713) 425-7100
   Facsimile: (713) 425-7101
10 (admitted *pro hac vice*)

11 W. Craft Hughes, Texas State Bar No. 24046123
   HUGHES ELLZEY, LLP
12 craft@crafthugheslaw.com
   2700 Post Oak Boulevard, Suite 1120
13 Houston, Texas 77056
   Telephone: (713) 554-2377
14 Facsimile: (888) 995-3335
   (admitted *pro hac vice*)
15

16 Attorneys for Plaintiffs Ronnie Carmichael,
   Kay Dermer, and Lambert Mendoza
17

18              UNITED STATES DISTRICT COURT

19    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

20
   RONNIE CARMICHAEL, KAY          CASE NO. 11-cv-00934 JHN (JCGx)
21 DERMER, and LAMBERT
   MENDOZA, individually and on behalf   **PLAINTIFFS' OPPOSITION TO**
22 of all others similarly situated,      **DEFENDANT'S MOTION TO**
                                          **DISMISS FIRST AMENDED**
23          Plaintiffs,                    **COMPLAINT**

24                                         Date:   August 15, 2011
            vs.                            Time:   2:00 p.m.
25                                         Crtrm: 790 Roybal
26 SAMSUNG ELECTRONICS
   AMERICA, INC.,
27
            Defendant.
28

# TABLE OF CONTENTS

*Page*

I.    INTRODUCTION .................................................................................... 1

II.   STATEMENT OF FACTS ...................................................................... 3

III.  ARGUMENT & AUTHORITIES ........................................................... 5

    A.   Defendant Has Not Met Its Burden ............................................... 5

    B.   Plaintiffs' Consumer Protection Claims Satisfy Rule 9(b) ................... 6

    C.   Plaintiff Dermer's CLRA Claim Is Legally Sufficient .......................... 9

        1.   The Capacitor Defect Is a Material Fact ................................... 13

        2.   Defendant Had Exclusive Knowledge of the Defect's Sheer
            Magnitude and Ongoing Nature ............................................... 14

        3.   Defendant Actively Concealed the Capacitor Defect ............... 15

    D.   The First Amended Complaint States a Claim for Violation of the
        UCL ................................................................................................ 16

        1.   Unlawful Business Practices Prong .......................................... 16

        2.   Unfair Business Practices Prong ............................................... 17

        3.   Fraudulent Business Practices Acts .......................................... 18

    E.   Plaintiff Dermer's FAL Claim Is Legally Sufficient ........................... 20

    F.   The Second Amended Complaint States Valid Claims Under the
        Consumer Protection Statutes of Washington and North Carolina ..... 20

    G.   Plaintiff Dermer's Song-Beverly Consumer Warranty Act Claim
        Is Valid .......................................................................................... 20

    H.   Plaintiff Dermer's Consumer Protection Claims Are Not Barred
        by the Applicable Statutes of Limitations .......................................... 22

        1.   Plaintiff Dermer's Consumer Protection Claims Were Timely
            Filed Under the Discovery Rule ............................................... 22

-i-

1

# TABLE OF CONTENTS

2

*Page*

3         2.    Defendant's Fraudulent Concealment Tolls the Statutes of

4                Limitations ................................................................ 24

5 IV.   CONCLUSION ............................................................ 25

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Opposition to Defendant's Motion to Dismiss First Amended Complaint

# TABLE OF AUTHORITIES

*Page(s)*

**FEDERAL CASES:**

*Annunziato v. eMachines, Inc.,*
    402 F. Supp 2d 1133 (C.D. Cal. 2005)...................................................21

*Ashcroft v. Iqbal,*
    129 S. Ct. 1937 (2009) .........................................................................6

*Baggett v. Hewlett-Packard Co.,*
    582 F. Supp. 2d 1261 (C.D. Cal. 2007).................................................7

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ..........................................................................5, 6

*Betz v. Trainer Wortham & Co.,*
    236 Fed. App'x 253 (9th Cir. May 11, 2007) ......................................23.

*Bruce v. Harley-Davidson,*
    No. CV 09-6588, CAS, 2010 U.S. Dist. LEXIS 98180
    (C.D. Cal. Jan. 15, 2010)......................................................................6

*Burdick v. Union Sec. Ins. Co.,*
    No. CV 07-4028 ABC, 2009 U.S. Dist. LEXIS 121768
    (C.D. Cal. Dec. 9, 2009)......................................................................23

*Cahill v. Liberty Mut. Ins. Co.,*
    80 F.3d 336 (9th Cir. 1996).................................................................5

*Chamberlan v. Ford Motor Co.,*
    369 F. Supp. 2d 1138 (N.D. Cal. 2005) .............................................13

*Cirulli v. Hyundai Motor Co.,*
    No. SACV 08-0854, 2009 U.S. Dist. LEXIS 125139
    (C.D. Cal. June 12, 2009)............................................................ 6, 8, 9

*Clemens v. DaimlerChrysler Corp.,*
    534 F.3d 1017 (9th Cir. 2008)...........................................................18

# TABLE OF AUTHORITIES

*Page(s)*

*Collins v. Gamestop Corp.*,
    No. C10-1210 THE, 2010 U.S. Dist. LEXIS 88878
    (N.D. Cal. Aug. 6, 2010) ........................................................................19

*Daniel v. County of Santa Barbara*,
    288 F.3d 375 (9th Cir. 2002).......................................................................5

*Dickerson v. Electrolux Home Prods.*,
    No. CV 10-5163-R, 2011 U.S. Dist. LEXIS 26994
    (C.D. Cal. Feb. 3, 2011) ...........................................................................21

*Estrella v. Freedom Fin. Network, LLC*,
    No. C09-3156 SI, 2010 U.S. Dist. LEXIS 61236
    (N.D. Cal. June 2, 2010)......................................................................19, 20

*Falk v. Gen. Motors Corp.*,
    496 F. Supp. 2d 1088 (N.D. Cal. 2007) ..................... 11, 13, 14, 15, 16, 17, 25

*Gusse v. Damon Corp.*,
    470 F. Supp. 2d 1110 (C.D. Cal. 2007)........................................................21

*In re Apple & AT&TM Antitrust Litig.*,
    596 F. Supp. 2d 1288 (N.D. Cal. 2008) .........................................................7

*In re NVIDIA GPU Litig.*,
    No. 08-04312, 2009 U.S. Dist. LEXIS 108500
    (N.D. Cal. Nov. 19, 2009) .........................................................................21

*In re Sony Grand WEGA KDF-E A10/A20 Series
Rear Projection HDTV TV Litig.*, ....................................................9, 11, 17

*In re Sony VAIO Computer Notebook Trackpad Litig.*
    No. 09cv2109 BEN, 2010 U.S. Dist. LEXIS 115142
    (S.D. Cal. Oct. 27, 2010)...........................................................................14

-iv-

**TABLE OF AUTHORITIES**

*Page(s)*

*In re Toyota Motor Corp. Unintended Acceleration*
*Marketing, Sales Practices, and Prods. Liab. Litig.,*
     No. 8:10ML 2151 JVS (FMOx), 2010 U.S. Dist. LEXIS 142663
      (C.D. Cal. Dec. 9, 2010).................................................................15, 25

*In re U.S. Fin. Sec. Litig.,*
     69 F.R.D. 24 (S.D. Cal. 1975)...........................................................20

*Karl Storz-Endoscopy-America, Inc. v. Surgical Techs., Inc.,*
     285 F.3d 848 (9th Cir. 2002)............................................................23

*Kearns v. Ford Motor Co.,*
     567 F.3d 1120 (9th Cir. 2009).............................................................9

*Lopez v. Smith,*
     203 F.3d 1122 (9th Cir. 2000)...........................................................25

*Marksikian v. Mercedes Benz USA,*
     No. CV 08-04876 AHM (JTLx), 2009 U.S. Dist. LEXIS 117012
      (C.D. Cal. May 4, 2009)......................................................14, 15, 16

*Martinez v. Welk Group, Inc.,*
     No. 09-CV-2883-AJB, 2011 U.S. Dist. LEXIS 58718
      (S.D. Cal. June 2, 2011) ...................................................................19

*Mirkin v. Wasserman,*
     5 Cal. 4th 1082 (1993)......................................................................13

*Mitchell v. Skyline Homes,*
     No. CIV S-09-2241 KJM, 2010 U.S. Dist. LEXIS 105547
      (S.D. Cal. Sept. 4, 2010)..............................................................22, 23

*Moore v. Kayport Package Express, Inc.,*
     885 F.2d 531 (9th Cir. 1989)..............................................................6

*Oestreicher v. Alienware Corp.,*
     544 F. Supp. 2d 964 (N.D. Cal. 2008) .....................................9, 11, 20

# TABLE OF AUTHORITIES

*Page(s)*

*Sanderson v. HCA-The Healthcare Co.,*
    447 F.3d 873 (6th Cir. 2006)................................................................6

*Shroyer v. New Cingular Wireless Servs.,*
    498 F.3d 976 (9th Cir. 2007)..............................................................22

*Spiegler v. Home Depot U.S.A., Inc.,*
    552 F. Supp. 2d 1036 (C.D. Cal. 2008)................................................6

*Webb v. Carter's Inc.,*
    272 F.R.D. 489 (C.D. Cal. 2011) ......................................................20

*Williams v. Gerber Prods. Co.,*
    523 F.3d 934 (9th Cir. 2008)................................................................5

*Yumul v. Smart Balance, Inc.,*
    733 F. Supp. 2d 1117 (C.D. Cal. 2010)........................................23, 24

## STATE CASES:

*Alliance Mortg. Co. v. Rothwell,*
    10 Cal.4th 1226 (1995)..................................................................... 19

*Am. Philatelic Soc'y v. Claibourne,*
    3 Cal. 2d 689 (1935).............................................................................

*Broberg v. The Guardian Life Ins. Co. of Am.,*
    171 Cal. App. 4th 912 (Cal. App. 2d Dist. 2009) .....................23, 24

*Cel-Tech Commc'ns, Inc. v. L.A.Cellular Tel. Co.,*
    20 Cal. 4th 163 (1999)......................................................................17

*Consumer Advocates v. Echostar Satellite Corp.,*
    113 Cal. App. 4th 1351 (2003)........................................................13

*Consumers Union of U.S., Inc v. Alta-Dena Certified Dairy,*
    4 Cal. App. 4th 963 (1992)..............................................................16

# TABLE OF AUTHORITIES

*Page(s)*

*Daugherty v. American Honda Motor Co.,*
    144 Cal. App. 4th 824 (2006)..........................................................9, 10, 11, 17

*Dean v. United of Omaha Life Insurance Co.,* 23, 24
    171 Cal. App. 4th 912 (2009)..................................................................23, 24

*Grisham v. Philip Morris U.S.A., Inc.,*
    40 Cal. 4th  623 (2007)..........................................................................19, 23

*Hewlett-Packard Co. v. Superior Court,*
    167 Cal. App. 4th 87 (2008)....................................................................12, 13

*Hicks v. Kaufman & Broad Home Corp.,*
    89 Cal. App. 4th 908 (2001)..........................................................................12

*In re Tobacco II Cases,*
    46 Cal. 4th 298 (2009)......................................................................16, 18, 19

*LiMandri v. Judkins,*
    52 Cal. App. 4th 326 (1997).............................................................10, 14, 15

*Linear Tech. Corp. v. Applied Materials, Inc.,*
    152 Cal. App. 4th 115 (2007)........................................................................18

*Lovejoy v. AT&T,*
    92 Cal. App. 4th 85 (2001).......................................................................14, 16

*Mass. Mutual Life Ins. Co. v. Superior Court,*
    97 Cal. App. 4th 1282 (2002).......................................................................22

*McKell v. Wash. Mutual, Inc.,*
    142 Cal. App. 4th 1457 (2006)............................................................16, 17, 18

*OCM Principal Opportunities Fund, L.P. v. CIBC World Mkts. Corp.,*
    157 Cal. App. 4th 835 (2007).......................................................................10

*Sanders v. Superior Court,*
    27 Cal. App. 4th 8329 (1994).......................................................................16

1

## TABLE OF AUTHORITIES

2

*Page(s)*

3
*Schnall v. Hertz Corp.,*
4
      78 Cal. App. 4th 1144 (2000)..........................................................................17

5
*Unruh-Haxton v. Regents of Univ. of Cal.,*
6
      162 Cal. App. 4th 343 (2008)........................................................................24

7
8
**STATUTES, RULES, & REGULATIONS:**

9
Fed. R. Civ. P. 9(b) ................................................................................ *passim*

10
Cal. Bus. & Prof. Code § 17200 ...............................................................1
11
12
Cal. Bus. & Prof. Code § 17500 ...............................................................2

13
Cal. Civ. Code § 338................................................................................24
14
Cal. Civ. Code. § 1750.............................................................................1
15
16
Cal. Civ. Code § 1783..............................................................................22

17
Cal. Civ. Code § 1791..............................................................................2

18
19
20
21
22
23
24
25
26
27
28

**MEMORANDUM OF POINTS & AUTHORITIES**

     Plaintiffs Ronnie Carmichael, Kay Dermer, and Lambert Mendoza (collectively, "Plaintiffs") submit this Opposition to the Motion to Dismiss First Amended Complaint filed by Defendant Samsung Electronics America, Inc. ("Samsung" or "Defendant"), and would respectfully show as follows:

**I.   INTRODUCTION**

     During the course of their business, manufacturers discover material defects that will (not might) manifest in their products and cause them to fail many years before the end of their useful lives.  Such defects can often be remedied through the use of better quality or more powerful parts that cost more than the parts causing the defects.  In such circumstances, manufacturers have the choice of either disclosing and remedying the defects at their own cost, or concealing the defects from their unsuspecting customers and forcing them to bear the costs of the manufacturers' mistakes.  Unfortunately for Plaintiffs and thousands of its other customers, Defendant chose the latter course.

     Since 2004 or before, Defendant has known and should have known that the capacitors it was installing in its Samsung liquid crystal display ("LCD"), digital light processing ("DLP") and plasma flat panel televisions (collectively, the "Samsung TVs") malfunction and fail prematurely, causing the Samsung TVs to malfunction and fail only a few years after being purchased—well before the end of their useful lives.  Defendant concealed the capacitor defect in the Samsung TVs from its customers and continued to install capacitors that would malfunction and fail prematurely in the Samsung TVs.

     Defendant now attempts to use its manufacturer's warranty as a complete shield to liability against Plaintiff Dermer's claims under California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*  California law, however, calls for a different result.  Defendant had exclusive knowledge of the nature and scope of the capacitor defect.  Defendant actively concealed the defect.  Defendant also knew and should have known that the defect is substantially certain to manifest itself in all

<div align="center">1</div>

1    Samsung TVs and cause them to fail prematurely.  For each reason, Defendant owed a

2    duty under California law to disclose the capacitor defect, and its breach of that duty is

3    actionable under the CLRA and UCL.

4        Defendant argues that Plaintiffs' consumer protection claims do not satisfy the

5    particularity requirement of Federal Rule of Civil Procedure 9(b).  Defendant's

6    argument ignores that Plaintiffs' consumer protection claims are based on Defendant's

7    concealment of material facts, not any of Defendant's misrepresentations.  Defendant's

8    argument also overlooks that Rule 9(b)'s particularity requirement is relaxed where

9    claims are based on fraudulent concealment or omission because a plaintiff cannot plead

10   either the specific time or place of an omission, as she is not alleging an act, but a

11   failure to act.  Plaintiffs' allegations satisfy Rule 9(b) because they set forth the content

12   of the omission, the party responsible, and the injuries resulting from the omissions.

13       Next, Defendant argues that Plaintiff Dermer has not stated breach of express and

14   implied warranty claims under the Song-Beverly Consumer Warranty Act ("Song-

15   Beverly Act"), Cal. Civ. Code § 1791, *et seq.*  Defendant's argument is curious given

16   that the First Amended Complaint does not contain a breach of express warranty claim.

17   Defendant's contention that Plaintiff Dermer's breach of the implied warranty of

18   merchantability claim under the Song-Beverly Act is insufficient due to a lack of

19   vertical privity is meritless because  California abolished the requirement of privity in

20   the Song-Beverly Act.  Defendant also mistakenly argues that Plaintiff Dermer has not

21   adequately alleged circumstances showing Defendant's time limitation on its implied

22   warranties is unconscionable.

23       Finally, Defendant contends that Plaintiff Dermer's claims under the CLRA,

24   UCL, and California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §

25   17500, *et seq.*, are barred by the applicable statutes of limitation.  Defendant's analysis

26   is inaccurate and incomplete because the discovery rule applies to each of those claims

27   and Plaintiff Dermer reasonably discovered the capacitor defect and filed suit within the

28   applicable limitations periods.  Defendant's fraudulent concealment also tolls the

1  statutes of limitations for the CLRA, UCL, and FAL.

2  **II.     STATEMENT OF FACTS**

3         The Samsung TVs are defective because they contain capacitors that fail

4  prematurely due to their inability to withstand the heat and/or voltage generated during

5  normal operation of the Samsung TVs.  (Pls.' First Am. Compl. ("FAC") ¶ 26).

6  Capacitors function as energy storage centers and are designed to operate within a

7  defined temperature and voltage range and for a certain period of time before ceasing to

8  operate.  (*Id.* ¶ 24.)  Capacitors' storage ability allows them to help smooth voltage

9  spikes caused by the opening and closing of electrical switches or lightning, thus

10  allowing a steady current to be supplied to circuits inside a television and prevent the

11  television from being destroyed.  (*Id.*)   However, if the wrong capacitors are used for

12  the given application and thereby exposed to a higher amount of heat or voltage than

13  they were designed to withstand, the capacitors malfunction and their life span is

14  severely diminished.  (*Id.* ¶ 25.)

15         Normal operation and usage of the Samsung TVs exposes the capacitors on their

16  power supply boards to excessive heat and/or excessive voltage, which causes the

17  capacitors to overheat, bulge, and/or leak.  (*Id.* ¶ 26.)  When the capacitors in the

18  Samsung TVs overheat, bulge, and/or leak due to exposure to the heat and/or voltage,

19  they can no longer relay signals properly and thereby cause the power supply boards in

20  the Samsung TVs to malfunction and ultimately fail altogether.  (*Id.*)

21         As a result, when Samsungs TVs are only one to four years old—many years

22  before the end of their expected life—they begin to make a series of clicking noises

23  when turned on; next, there is a delay in their actually turning on; and then, the

24  televisions turn on and off repeatedly.  (*Id.* ¶ 27.)  The clicks, delays in turning on, and

25  on/off cycling get progressively worse before leading to a total failure such that

26  Samsung TVs will not turn on.  (*Id.*)

27         Defendant has known of the capacitor defect in the Samsung TVs since at least

28  2004, having learned of the defect through pre-release testing data, numerous complaints

1   it received from customers about the problems caused by the capacitor defect, and

2   numerous reports it received from retailers about customer complaints about the

3   problems caused by the capacitor defect.  Those complaints and reports would number

4   in the thousands over time.  (*Id.* ¶ 34.)  Defendant had exclusive knowledge of that data

5   and those complaints.  Thus, only Defendant had knowledge of the sheer magnitude and

6   ongoing nature of the capacitor defect in the Samsung TVs.  (*Id.*)  Additionally, since

7   2005, Defendant has been aware and should have been aware of the numerous customer

8   complaints about the problems caused by the capacitor defect in the Samsung TVs that

9   have been posted on internet message boards.  (*Id.* ¶ 35.)

10          Defendant could have used more powerful and/or better quality capacitors in the

11  Samsung TVs, but it did not do so because they would cost more and cut into its profit

12  margin.  (*See id.* ¶ 37.)  Instead, until recently, Defendant's general practice was to refer

13  its customers to independent repair facilities and not pay for any repairs after the

14  warranty expired.  (*Id.* ¶ 38.)  However, Defendant provided out-of-warranty repairs to

15  the owners of certain Samsung TV models who complained loudly enough and long

16  enough to Defendant's customer support representatives, who admitted that the

17  capacitor issue is a known problem and arranged for Defendant to replace the power

18  supply boards in their Samsung TVs for free, even when the express warranty for the

19  Samsung TVs had already expired.  (*Id.*)

20          In or around November 2010, Defendant began to carry out what is essentially a

21  silent recall, offering to replace for free the power supply boards of owners of certain

22  Samsung LCD TV models who contacted Defendant about the capacitor defect.  (*Id.* ¶

23  40.)  In the limited number of Samsung TVs that Defendant has repaired by replacing

24  their power supply boards, Defendant has installed, or instructed to be installed, power

25  supply boards that also contain defective capacitors, and, thus, Defendant has not

26  remedied the capacitor defect in those Samsung TVs.  (*Id.* ¶ 41.)

27          Despite the fact that Defendant knew and had reason to know about the capacitor

28  defect since at least 2004, Defendant nevertheless manufactured, sold, and distributed

Samsung TVs with defective capacitors for years while actively concealing and failing to disclose the capacitor defect to purchasers. (*Id.* ¶ 42.)  Defendant neither informed purchasers of the capacitor defect at the point of sale or thereafter, nor did it publicly recall the Samsung TVs or reveal the existence of the defect on its websites or marketing materials, where it touts the characteristics of the Samsung TVs.  (*Id.*)  Moreover, notwithstanding Defendant's silent recall of certain LCD Samsung TV models, Defendant refused to pay for the replacement of the capacitors in Plaintiffs' defective Samsung TVs, each of which has experienced the problems associated with the defective capacitors. (*Id.* ¶¶ 56, 59, 63.)

Plaintiffs filed this action on January 31, 2011 to redress injuries they sustained as a result of Defendant's concealment of the capacitor defect. (*See* Pls.' Compl. ¶ 1 (Doc. 1).)  Plaintiffs filed their First Amended Complaint on June 20, 2011.  (*See* FAC.) Plaintiffs seek certification of a class consisting of residents of California, Washington, and North Carolina, with subclasses composed of residents from each state. (*Id.* ¶ 68.)

## III.   ARGUMENT & AUTHORITIES

### A.   Defendant Has Not Met Its Burden.

Defendant argues that the Complaint should be dismissed in its entirety.  Only under "extraordinary" circumstances is Rule 12(b)(6) dismissal proper. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996); *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 939 (9th Cir. 2008) (reversing order dismissing UCL and CLRA false advertising action and noting the "rare situation" where dismissal of such a case is appropriate). When considering a motion to dismiss under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Daniel v. County of Santa Barbara*, 288 F.3d 375, 380 (9th Cir. 2002).

Dismissal is appropriate only where, viewed in its totality, a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face"—"heightened fact pleading of specifics" is not required. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual

1   content that allows the court to draw the reasonable inference that the defendant is liable

2   for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).   The

3   plausibility inquiry is "a context-specific task that requires the reviewing court to draw

4   on its judicial experience and common sense." *Id*. at 1950.   The Supreme Court has

5   cautioned that "a well-pleaded complaint may proceed even if it strikes a savvy judge

6   that actual proof of those facts is improbable, and that a recovery is very remote and

7   unlikely." *Twombly*, 550 U.S. at 556.   Additionally, because of the important societal

8   goals forwarded by California's consumer protection statutes, motions to dismiss claims

9   under those statutes are highly disfavored. *See, e.g., Williams*, 552 F.3d at 938.

10          Dismissal is not warranted here, as Defendant fails to meet its burden of showing

11   that Plaintiffs have not alleged enough facts to state a plausible claim for relief.

12   **B.      Plaintiffs' Consumer Protection Claims Satisfy Rule 9(b).**

13          Rule 9(b)'s particularity requirement must be read in harmony with Rule 8(a)'s

14   requirement of a "short and plain" statement of the claim. *Sanderson v. HCA-The*

15   *Healthcare Co.*, 447 F.3d 873, 876 (6th Cir. 2006); *Spiegler v. Home Depot U.S.A., Inc.*,

16   552 F. Supp. 2d 1036, 1044 (C.D. Cal. 2008).   "Thus, Rule 9(b) is satisfied if the

17   allegations 'identif[y] the circumstances constituting fraud (or mistake) so that the

18   defendant can prepare an adequate answer from the allegations.'" *Spiegler*, 552 F.

19   Supp. 2d at 1044 (quoting *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540

20   (9th Cir. 1989)) (alterations in original).

21          Furthermore, "when an allegation rests on a claim of fraudulent omission, the

22   Rule 9(b) standard is relaxed because 'a plaintiff cannot plead either the specific time of

23   [an] omission or the place, as he is not alleging an act, but a failure to act.'" *Cirulli v.*

24   *Hyundai Motor Co.*, No. SACV 08-0854, 2009 U.S. Dist. LEXIS 125139, at *11 (C.D.

25   Cal. June 12, 2009) (citation omitted); *accord Bruce v. Harley-Davidson*, No. CV 09-

26   6588, CAS, 2010 U.S. Dist. LEXIS 98180, at *13 (C.D. Cal. Jan. 15, 2010) ("Because

27   plaintiffs' case is based on a theory of fraudulent omission or concealment, the Court

28   recognizes that plaintiffs will 'not be able to specify the time, place, and specific content

1  of an omission as precisely as a plaintiff in a false representation claim.'") (citation

2  omitted); *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007)

3  (explaining that claims based on an omission or concealment "can succeed without the

4  same level of specificity required by a normal fraud claim" because a plaintiff will "not

5  be able to specify the time, place, and specific content of an omission as precisely as

6  would a plaintiff in a false representation claim").

7        Thus, the inability of Plaintiffs to specify the time or place of Defendants'

8  omissions "will not bar their claims" under Rule 9(b). *In re Apple & AT&TM Antitrust*

9  *Litig.*, 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008). Plaintiffs have pleaded the content

10 of the omissions (*e.g.*, that the Samsung TVs are defective because they contain

11 capacitors that malfunction and fail prematurely, causing the Samsung TVs to do the

12 same) with sufficient particularity to survive Rule 9(b) scrutiny. (*See, e.g.*, FAC ¶¶ 26-

13 27, 45, 64.) Plaintiffs also allege that Defendant is the party responsible for the

14 omissions. (*See, e.g.*, *id.* ¶ 42.) Plaintiffs further allege that as a direct and proximate

15 result of the capacitor defect, Plaintiffs have incurred or will incur ascertainable losses in

16 the form of repair costs, payment of the Samsung TVs premium purchase price,

17 diminution in value damages, and the loss of use of their Samsung TVs. (*See, e.g.*, *id.*

18 ¶¶ 42, 89, 136, 147.) Therefore, Plaintiffs adequately identify the circumstances

19 constituting Defendant's alleged fraudulent concealment so that it can prepare an

20 adequate answer from the allegations. *See In re Apple*, 596 F. Supp. 2d at 1310 (holding

21 that Rule 9(b) was satisfied where plaintiffs alleged content of omissions, identity of

22 parties responsible for omissions, and injuries resulting from omissions).

23       Defendant does not argue otherwise. Rather, Defendant asserts that Plaintiff

24 Dermer has not alleged when she saw the following four statements that appeared on

25 Defendant's website representing that the Samsung TVs will last for decades: (1)

26 "Lifespan [of LCD HDTVs] is excellent: typically, **60,000 hours** (equal to about 20

27 years if used eight hours a day)."; (2) "Samsung LCD TVs have an expected life span of

28 **60,000 operational hours**."; (3)"Mr. Samsung" states: "the average LCD life span is

Plaintiffs' Opposition to Defendant's Motion to Dismiss First Amended Complaint

1 measured in hours and is usually in the **tens of thousands of hours**."; and (4) "Current

2 generation Samsung Plasma TVs with the Gen-5 display panel have, on average, half

3 lives of **60,000 hours** under normal operating conditions. That's more than 27 years if

4 you watch your Plasma TV six hours a day. Older generation Samsung Plasma TVs with

5 the Gen-4 display panel have, on average, half lives of **50,000 hours** under normal

6 operating conditions. That's nearly 23 years if you watch your Plasma TV six hours a

7 day." (FAC ¶ 18.)  Defendant's argument is a red herring.  Plaintiff Dermer does <u>not</u>

8 allege those to be misrepresentations.  Those statements are alleged to show that the

9 useful life of the Samsung TVs greatly exceeds one to three years.  Those statements are

10 also alleged to disprove Defendant's argument that the useful life of the Samsung TVs is

11 subjective based on consumer expectations.

12       Defendant also incorrectly asserts that Plaintiffs have not alleged facts showing

13 Defendant was aware of the capacitor defect when they purchased their Samsung TVs,

14 even though Rule 9(b) explicitly permits a plaintiff to allege generally a defendant's

15 knowledge and intent.  Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other

16 conditions of a person's mind may be alleged generally.").  Plaintiffs allege that

17 "Defendant has known of the capacitor defect in the Samsung TVs since at least 2004,

18 having learned of the defect through pre-release testing data, numerous complaints it

19 received from customers about the problems caused by the capacitor defect, and

20 numerous reports it received from retailers about customer complaints about the

21 problems caused by the capacitor defect."  (FAC ¶ 34.)  Plaintiffs also allege that

22 "[t]hose complaints and reports would number in the thousands over time."  (*Id.*)

23 "Defendant had exclusive knowledge of that data and those complaints.  Thus, only

24 Defendant had knowledge of the sheer magnitude and ongoing nature of the capacitor

25 defect in the Samsung TVs."  (*Id.*)  Plaintiffs also allege that Defendant carried out a

26 silent recall of certain LCD Samsung TVs, which further evidences Defendant's

27 knowledge of the capacitor defect.  (*Id.* ¶ 43.)  Those allegations are sufficient to

28 withstand a motion to dismiss.  *See, e.g., Cirulli*, 2009 U.S. Dist. LEXIS 125139, at *9-

<center>8</center>

10 (plaintiff sufficiently alleged defendant knew or should have known of defect at time of sale where defendant allegedly tracked database for reports of defective Sonata sub-frames, from which defendant knew its 1999-2004 Sonatas were experiencing high levels of sub-frame deterioration, steering loss, and accidents ).

Plaintiffs' detailed description of Defendant's source of knowledge distinguish this case from *Kearns v. Ford Motor Co.*, where the plaintiff's "claims of nondisclosure were couched in general pleadings alleging Ford's intent to conceal." 567 F.3d 1120, 1127 (9th Cir. 2009). Unlike here, the plaintiff in *Kearns* did not allege any facts that could support a finding that the defendant knew of material information and decided to conceal that information from its customers. *See id.* at 1125-26.

## C. Plaintiff Dermer's CLRA Claim Is Legally Sufficient.

Defendant's attack on Plaintiff Dermer's CLRA claim is based entirely on its mistaken contention that it owned no duty to disclose the capacitor defect it knew of to her or any other of its California customers. As an initial matter, under the two cases on which Defendant principally relies, Plaintiff Dermer's CLRA claim is valid even if Defendant did not have a duty to disclose the capacitor defect because the manifested in her Samsung TV before the manufacturer's warranty expired. *See In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F. Supp. 2d 1077, 1094 (S.D. Cal. 2010) (stating that a "manufacturer cannot be liable under the CLRA for failing to disclose information about a defect that *manifests itself* outside of the Express Warranty period, unless (1) the omitted fact runs counter to a representation made by the defendant, or (2) the defendant had a duty to disclose the omitted information."); *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 969 (N.D. Cal. 2008) (same). (*See also* FAC ¶¶ 57, 59.) For that reason alone, Plaintiff Dermer's CLRA claim should not be dismissed.

Furthermore, Defendant's argument is premised on a misinterpretation of *Daugherty v. American Honda Motor Co.*, 144 Cal. App. 4th 824 (2006). According to Defendant, *Daugherty* created "two limited exceptions" to the purported "general rule"

1    that CLRA liability may not be imposed on a manufacturer for its failure to disclose a

2    defect that manifests itself after the warranty period expires. (Def.'s Mem. at 8-9.)  In

3    fact, *Daugherty* addressed whether the wholly separate and distinct question of whether

4    the CLRA extends to fraudulent omissions—*Daugherty* does not mention warranties or

5    warranty periods at all in its CLRA analysis.  144 Cal. App. 4th at 833-36.   What

6    Defendant refers to as the "two limited exceptions" to its "general rule of no liability"

7    are actually the two circumstances in which *Daugherty* held a fraudulent omissions

8    claim could be stated under the CLRA (again, without any mention of warranties or

9    warranty periods): "In short, although a claim may be stated under the CLRA in terms

10   constituting fraudulent omissions, to be actionable the omission must be contrary to a

11   representation actually made by the defendant, or an omission of a fact the defendant

12   was obliged to disclose."  *Id.* at 835.  Defendant had a duty to disclose under both

13   alternatives.   First, Defendant's omission of the capacitor defect is contrary to

14   Defendant's representations that the Samsung TVs have useful lives of twenty years or

15   more. (*See* FAC ¶¶ 18, 26-27.)  Samsung TVs that fail prematurely due to the capacitor

16   defect do not have useful lives of twenty years or more. (*See id.* ¶¶ 26-27.)

17        Second, Defendant had a duty to disclose the capacitor defect.  Under California

18   law, a duty to disclose arises in four circumstances: "(1) when the defendant is in a

19   fiduciary relationship with the plaintiff; (2) when the defendant had exclusive

20   knowledge of material facts not known to the plaintiff; (3) when the defendant actively

21   conceals a material fact from the plaintiff; and (4) when the defendant makes partial

22   representations but also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal.

23   App. 4th 326, 336 (1997); *accord OCM Principal Opportunities Fund, L.P. v. CIBC*

24   *World Mkts. Corp.*, 157 Cal. App. 4th 835, 859 (2007).

25        The *Daugherty* plaintiffs alleged that Honda was obligated to disclose the

26   existence of the alleged gasket defect that caused a gradual leak, but they failed to plead

27   an independent basis for that duty. *Id.* at 836 ("Daugherty alleged no facts that would

28   establish Honda was 'bound to disclose' the defect in the F22 engine.").  The plaintiffs

1  did not allege that the oil leak caused by the gasket problem was material to any of the

2  purchasers. *Id.* at 833- 837; *accord Falk v. GMC*, 496 F. Supp. 2d 1088, 1095 (N.D.

3  Cal. 2007). The court indicated that an "unreasonable" safety risk would lead to a duty

4  to disclose, but the plaintiffs did not sufficiently allege such risk. As a result, the court

5  held that the plaintiffs did not plead a viable CLRA nondisclosure claim. *Id.* at 837.

6      At one point, Defendant correctly states that a duty to disclose is not limited to

7  product safety. (*See* Def.'s Mem. at 9 (stating that CLRA liability is imposed if "the

8  defendant had a duty to disclose, such as a fact related to product safety").) In the next

9  breath, however, Defendant improperly attempts to limit a duty to disclose solely to

10 information about safety concerns. (*See id.* ("Plaintiffs do not allege that the alleged

11 capacitor defect raises a safety concern. Instead, they assert a broader duty to disclose

12 based on (1) [Defendant's] exclusive knowledge of facts not known to Plaintiffs; and (2)

13 [Defendant's] alleged active concealment of material facts from the Plaintiffs.").) The

14 question is whether Defendant had exclusive knowledge of or actively concealed

15 material facts, not just whether Defendant had exclusive knowledge of or actively

16 concealed product safety information. Although such information is material, it is not

17 the only kind of information that is material. Other types of information can induce a

18 reasonable consumer to act differently.

19     As noted above, Defendant relies almost exclusively on *In re Sony* and

20 *Oestreicher* in support of its argument that it owed no duty to disclose to Plaintiff

21 Dermer. However, like Defendant here, those decisions misinterpret *Daugherty* to stand

22 for the (incorrect) proposition that "under the CLRA, a manufacturer's duty to disclose

23 information related to defect that manifests itself after the expiration of an Express

24 Warranty is limited to issues related to product safety." *In re Sony*, 758 F. Supp. 2d at

25 1095 (citing *Oestreicher*, 544 F. Supp. 2d at 972); *see also Oestreicher*, 544 F. Supp. 2d

26 at 969 (mistakenly concluding that "*Daugherty* expressly rejected the notion that a

27 manufacturer can be liable under the CLRA for failure to disclose a defect that manifests

28 itself after expiration of the warranty period"). In those two decisions, federal courts

1   interposed their own policy considerations on California's consumer protection statutes,

2   usurping the role of the California legislature.  Besides, their policy position improperly

3   and unfairly shifts the costs of manufacturers' known defects to unsuspecting customers.

4   Those courts' policy position also strongly encourages manufacturers to fraudulently

5   conceal material defects that they know will manifest in their products before the end of

6   their useful lives but usually after their manufacturers' warranties expire.  Warranties are

7   not meant to shield fraudulent conduct from liability.

8        At any rate, the Second Amended Complaint does allege facts showing that the

9   capacitor defect poses an unreasonable safety risk.  (*See* FAC ¶ 53 ("Plaintiff

10  Carmichael noticed a burning smell coming from his Samsung TV, which began to turn

11  itself on and off repeatedly.").)

12       Furthermore, *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908

13  (2001), holds that a "defect is defined by a substantial certainty of premature failure, not

14  on an actual malfunction during the warranty period." *Hewlett-Packard Co. v. Superior*

15  *Court*, 167 Cal. App. 4th 87, 95 (2008); *see Hicks*, 89 Cal. App. 4th at 918 (finding that

16  "proof of breach of warranty does not require proof the product has malfunctioned but

17  only that it contains an inherent defect which is substantially  certain to result in

18  malfunction during the useful life of the product"; the "question whether an inherently

19  defective product is presently functioning as warranted goes to the remedy for the

20  breach, not proof of the breach itself.").  Here, Plaintiff Dermer alleges that the

21  "capacitor defect exists in each of the Samsung TVs[;], if it has not already manifested

22  itself in some of the Samsung TVs, it is substantially certain to do so before those

23  Samsung TVs are five years old due to the nature of the defect." (FAC ¶ 28.)  Under

24  *Hicks*, the capacitor defect has already manifested itself in the Samsung TVs because

25  they are substantially certain to fail prematurely.[1] *See Hewlett-Packard*, 167 Cal. App.

26

27  ───────────────

28  [1]     In *In re Sony*, the court legislated from the bench again by limiting the "*Hicks*
    (footnote continued)

1  4th at 96 (under *Hicks*, "an actual malfunction of the notebook screens would not be

2  necessary to establish defect, if it could be established that the notebook screens were

3  substantially certain to fail prematurely").

4         *1.     The Capacitor Defect Is a Material Fact.*

5         For a non-disclosure to be material, a plaintiff must show that "had the omitted

6  information been disclosed, one would have been aware of it and behaved differently."

7  *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993); *accord Falk*, 496 F. Supp. 2d at

8  1095. For CLRA claims materiality is judged by the effect on a "reasonable consumer."

9  *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003).

10         The capacitor defect is a material fact because a reasonable person would attach

11  importance to such information and would be induced to act upon such information in

12  making purchase decisions. (FAC ¶ 45.) Plaintiffs alleges that a "competently designed

13  and manufactured television will have a power supply board that will last the full

14  expected life of the television." (*Id.* ¶ 19.) "A reasonable consumer would not purchase

15  one of the premium-priced Samsung TVs knowing that he or she would have to spend

16  hundreds of dollars in a couple of years to fix the damage caused by the capacitor

17  defect." (*Id.* ¶ 47.) Plaintiffs further allege that they would not have purchased the

18  Samsung TVs if they had known about the capacitor defect. (*Id.* ¶ 48.)

19         Likewise, in *Falk*, the plaintiffs alleged that they would not have purchased or

20  would have demanded a lower price for the trucks at issue if they had known of a defect

21  in their speedometers. 496 F. Supp. 2d at 1095; *see also Chamberlan v. Ford Motor*

22  *Co.*, 369 F. Supp. 2d 1138, 1145 (N.D. Cal. 2005) (denying summary judgment on

23  CLRA claim where plaintiffs presented evidence that "they would not have bought the

24  cars had they known of the increased failure risk"). The plaintiffs also alleged that a

25  reasonable consumer would expect a speedometer to last for the life of a vehicle. *Falk*,

26  _____

27  exception" to consumer goods. 758 F. Supp. 2d at 1099.

28

1   496 F. Supp. 2d at 1096.  The court found that the plaintiffs' allegations differentiated
2   their case from *Daugherty*, in which "reasonable consumers would have had no
3   expectations about the failed parts." *Id.* at 1095.  In holding that information about the
4   defective speedometers was material, the explained that "[c]ommon experience supports
5   plaintiffs' claim that a potential car buyer would view as material a defective
6   speedometer." *Id.* at 1096.  Here, too, common experience supports Plaintiff Dermer's
7   claim that a television buyer would view a capacitor defect that will cause the television
8   to malfunction and fail prematurely, and costs hundreds of dollars to repair, as material.
9       Similarly, in *In re Sony VAIO Computer Notebook Trackpad Litigation*, a case
10  that involved no safety concerns, the court held that a defective trackpad in a notebook
11  was a material fact where the plaintiffs alleged that they "would never have purchased
12  the notebooks" had they "known about the defect." No. 09cv2109 BEN, 2010 U.S. Dist.
13  LEXIS 115142, at *13-15 (S.D. Cal. Oct. 27, 2010); *see also Lovejoy v. AT&T Corp.*, 92
14  Cal. App. 4th 85, 96 (2001) (finding defendant had duty to disclose material information
15  about phone service charges).

16   ## 2.  *Defendant Had Exclusive Knowledge of the Defect's Sheer Magnitude*
17      *and Ongoing Nature.*

18      Defendant was obligated to disclose the capacitor defect because it was a material
19  fact within Defendant's exclusive knowledge. *See LiMandri*, 52 Cal. App. 4th at 336.
20      In *Marksikian v. Mercedes Benz USA*, the Court found that the plaintiffs'
21  "allegations of knowledge" were "plainly sufficient." No. CV 08-04876, 2009 U.S.
22  Dist. LEXIS 117012, at *14 (C.D. Cal. May 4, 2009).  The plaintiffs alleged the
23  defendant "had exclusive knowledge of material facts not known to them, 'through its
24  own testing, records of customer complaints, dealership repair orders, as well as various
25  other sources'" *Id.* Here, only Defendant was aware of pre-release testing data, only
26  Defendant received numerous complaints from customers, and only Defendant received
27  numerous reports of customer complaints about the capacitor defect from retailers. (*See*
28  FAC ¶ 34.)  Therefore, Defendant had exclusive knowledge of the "sheer magnitude and

ongoing nature of the defect." *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, No. 8:10ML 2151 JVS (FMOx), 2010 U.S. Dist. LEXIS 142663, at *201 (C.D. Cal. Dec. 9, 2010) (exclusive knowledge adequately alleged); *see also Falk*, 496 F. Supp. 2d at 1096 (sufficient allegations of exclusive knowledge where car manufacturer had exclusive access to aggregate dealership data, pre-release testing data, and numerous consumer complaints).

### *3. Defendant Actively Concealed the Capacitor Defect.*

Even if Defendant did not have exclusive knowledge of the nature and extent of the capacitor defect, Defendant still had a duty to disclose the capacitor defect because it "actively concealed" the defect. *See LiMandri*, 52 Cal. App. 4th at 336.

Plaintiff Dermer alleges that Defendant actively concealed the capacitor defect by performing out-of-warranty repairs for customers who complained loudly enough (and to whom the defect was admitted by Defendant's customer service representatives), but not informing all customers of the capacitor defect or carrying out a public recall. (FAC ¶ 39.) Plaintiff Dermer also alleges that Defendant carried out a silent recall, offering to replace for free the power supply boards of certain Samsung LCD TV models. (*Id.* ¶ 40.) Plaintiff further alleges that in the limited number of Samsung TVs Defendant has offered to repair, it has installed, or instructed to be installed, power supply boards that also contain defective capacitors. (*Id.* ¶ 41.) Those allegations "indicate that Defendant knew about the problem, developed measured and selective responses to owners' complaints, but concealed the problem from the general customer base."[2] *Marksikian*,

---

[2] Similarly, in *Falk*, the court explained: "First, the fact that various GM customers complained between 2003 and 2005 yet GM never made any attempt to notify other customers or effect a recall, suggests that GM may have attempted to actively conceal the alleged defect in their speedometer." *Falk*, 496 F. Supp. 2d at 1097. The court further stated that "Plaintiffs argue that '[w]here GM replaced the Trucks' speedometers pursuant to warranty provisions, GM utilized equally defective speedometers and speedometer mechanisms such that the defect was not corrected even though GM (footnote continued)

1   2009 U.S. Dist. LEXIS 117012, at *14-15 (finding active concealment where the

2   defendant performed "good will" adjustments to certain owners who complained loudly

3   enough but did not inform  owners of affected products, and carried out a service

4   campaign that provided only a temporary fix, "thereby concealing the full extent of the

5   problem").

6           Plaintiff Dermer has thus set forth sufficient allegations to support the conclusion

7   that Defendant had a duty to disclose the capacitor defect.

8   **D.      The First Amended Complaint States a Claim for Violation of the UCL.**

9           "[T]he primary purpose of the unfair competition law . . . is to protect the public

10  from unscrupulous business practices." *Consumers Union of U.S., Inc v. Alta-Dena*

11  *Certified Dairy*, 4 Cal. App. 4th 963, 975 (1992); *see also In re Tobacco II Cases*, 46

12  Cal. 4th 298, 312 (2009).  The UCL imposes strict liability on anyone who violates its

13  prohibitions and the "scope of the UCL is quite broad." *McKell v. Wash. Mutual, Inc.*,

14  142 Cal. App. 4th 1457, 1471 (2006).  Because the statute is framed in the disjunctive, a

15  business practice need only meet one of the three criteria ("unlawful," "unfair" or

16  "fraudulent") to violate the UCL.  *McKell*, 142 Cal. App. 4th at 1471.  The First

17  Amended Complaint alleges facts giving rise to liability under each prong.

18          *1.      Unlawful Business Practices Prong*

19          "The 'unlawful' practices prohibited by section 17200 are any practices forbidden

20  by law, be it civil, criminal, federal, state, or municipal, statutory, regulatory, or court-

21  made." *Sanders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994).  The First

22  Amended Complaint alleges that Defendant's business practices were unlawful because

23  they violated the CLRA and FAL.  As those claims are adequately pleaded, so is

24  _____

25  informed consumers that it was' [] . . . suggests that GM tried to gloss over the problem

26  with its speedometer by replacing broken ones with the same exact model of
    speedometer, thereby giving the impression that the defects were unique cases  This

27  might very will constitute active concealment of a very systematic problem." *Id.*
    (finding duty to disclose); *see also Lovejoy*, 92 Cal. App. 4th at 96.

28

1  Plaintiff Dermer's claim under the UCL's unlawful prong.  (*See* discussion, *supra* at

2  Part III.C & *infra* at Part III.E.)

3       *2.      Unfair Business Practices Prong*

4       "A business practice is unfair within the meaning of the UCL if it violates

5  established public policy or if it is immoral, unethical, oppressive or unscrupulous and

6  causes injury to consumers which outweighs its benefits." *McKell*, 142 Cal. App. 4th at

7  1473.    The unfair prong is "'intentionally broad, thus allowing courts maximum

8  discretion to prohibit new schemes to defraud.'" *Schnall v. Hertz Corp.*, 78 Cal. App.

9  4th 1144, 1166 (2000) (citation omitted).  As the California Supreme Court emphasized:

10 "'In permitting the restraining of all 'unfair' business practices,'" the UCL "'undeniably

11 establishes only a wide standard to guide courts of equity . . . .  [G]iven the creative

12 nature of the scheming mind, the Legislature evidently concluded that a less inclusive

13 standard would not be adequate.'" *Cel-Tech Commc'ns, Inc. v. L.A.Cellular Tel. Co.*, 20

14 Cal. 4th 163, 181 (1999) (citation omitted).

15      Defendant asserts that Plaintiff Dermer's allegations of "unfair" trade practices

16 are substantially the same as those in *Daugherty* and *In re Sony*.  That is not true.

17 *Daugherty* is distinguishable because, unlike here, no material facts were concealed

18 from consumers.  144 Cal App. 4th at 839 ("The injury to consumers is not substantial,

19 if indeed it can be characterized as an injury at all."); *see also id.* at 833-37; *Falk*, 496 F.

20 Supp. 2d at 1095-96.  *In re Sony* is distinguishable because (1) the capacitor defect is

21 substantially certain to manifest itself in the Samsung TVs and shorten their effective

22 life span many years before the end of their useful lives, and (2) Plaintiff Dermer alleges

23 that her Samsung TV failed to function as warranted before the manufacturer's warranty

24 expired.[3]  *See In re Sony*, 758 F. Supp. 2d at 1091 ("Failure to disclose a defect that

25 ────────────────────

26 [3]     Defendant's musings about whether Plaintiff Dermer is an adequate class

27 representative are untimely.  Plaintiffs will address those conclusory assertions in their
   motion for class certification.

28

1   **might shorten** the effective life span of a component part to a consumer product does

2   not constitute a 'substantial injury' under the unfair practices prong of the UCL **where**

3   **the product functions as warranted throughout the term of its Express Warranty**.")

4   (emphasis added). *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026-27 (9th Cir.

5   2008) is distinguishable for the same reasons.

6      *3.    Fraudulent Business Practices Prong*

7         To prove that a practice is "fraudulent" within the meaning of the UCL, one need

8   not prove the elements of the common law tort of fraud. *Tobacco II*, 46 Cal. 4th at 312.

9   "Instead, one need only show that 'members of the public are likely to be deceived.'"

10  *Id.*  As an initial matter, "California courts . . . have recognized that whether a business

11  practice is deceptive will usually be a question of fact not appropriate for decision on

12  demurrer." *Williams*, 523 F.3d at 939 (citing *Linear Tech. Corp. v. Applied Materials,*

13  *Inc.*, 152 Cal. App. 4th 115, 134-35 (2007) ("Whether a practice is deceptive, fraudulent,

14  or unfair is generally a question of fact which requires 'consideration and weighing of

15  evidence from both sides' and which usually cannot be made on demurrer.")); *accord*

16  *McKell*, 142 Cal. App. 4th at 1472.  Defendant's argument is premature.

17        Plaintiff Dermer alleges that by actively concealing and  failing to disclose the

18  capacitor defect, Defendant has engaged in fraudulent business acts and practices under

19  the UCL because Defendant has deceived, and continues to deceive, consumers into

20  believing that the Samsung TVs do not contain defective capacitors that malfunction and

21  fail prematurely, causing the Samsung TVs to click, delay in turning on, cycle on and

22  off, and eventually not turn on at all many years before the end of their useful lives.

23  (FAC ¶ 102.)  Defendant contention that Plaintiff Dermer has not sufficiently alleged a

24  duty to disclose the capacitor defect is without merit for the reasons discussed above.

25  (*See* discussion, *supra* at Part III.B-C.)   Defendant also repeats its argument that

26  Plaintiffs have not alleged specific representations with particularity.  That argument is

27  beside the point because Plaintiff Dermer's claims are based on Defendant's omissions,

28  not any of its misrepresentations.

1    The same is true of Defendant's related argument that Plaintiff Dermer has not

2  pled reliance on any misrepresentations. Plaintiff Dermer sufficiently pleads reliance

3  because she alleges she reasonably relied on Defendant's omission of the capacitor

4  defect. (*See* FAC ¶ 106 ("Plaintiff Dermer and the members of the California Subclass

5  reasonably interpreted Defendant's omission of the capacitor defect to mean that

6  Samsung TVs do not contain defective capacitors that malfunction and ultimately fail

7  altogether many years before the end of the useful life of the Samsung TVs, causing the

8  Samsung TVs to click, delay in turning on, cycle on and off, and eventually not turn on

9  at all."); ¶ 107 ("Plaintiff Dermer and the California Subclass members would not have

10  purchased their Samsung TVs if they had known that they contained defective

11  capacitors . . . .").) "'Whether reliance was reasonable is a question of fact for the jury,

12  and may be decided as a matter of law only if the facts permit reasonable minds to

13  come to just one conclusion.'" *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623,

14  637 (2007) (citation omitted); *accord Alliance Mortg. Co. v. Rothwell*, 10 Cal.4th 1226,

15  1239 (1995) ("'Except in the rare case where the undisputed facts leave no room for a

16  reasonable difference of opinion, the question of whether a plaintiff's reliance is

17  reasonable is a question of fact.'").

18    Furthermore, a presumption of reliance arises where, as here, a defendant omits

19  material facts. *See, e.g., Martinez v. Welk Group, Inc.*, No. 09-CV-2883-AJB, 2011

20  U.S. Dist. LEXIS 58718, at *20 (S.D. Cal. June 2, 2011) ("[R]eliance will be presumed

21  if the alleged misrepresentation or omission is judged to be 'material,' such that 'a

22  reasonable man would attach importance to its existence or nonexistence in determining

23  his choice of action.'" (citing *Tobacco II*, 46 Cal. 4th at 326); *Collins v. Gamestop*

24  *Corp.*, No. C10-1210 THE, 2010 U.S. Dist. LEXIS 88878, at *8-9 (N.D. Cal. Aug. 6,

25  2010); *Estrella v. Freedom Fin. Network, LLC*, No. C09-3156 SI, 2010 U.S. Dist.

26  LEXIS 61236, at *32 (N.D. Cal. June 2, 2010); *In re U.S. Fin. Sec. Litig.*, 69 F.R.D. 24,

27  44 (S.D. Cal. 1975). A presumption of reliance is raised because Defendant's omission

28  of the capacitor defect was material, as discussed more fully above. (*See* discussion,

1 | *supra* at Part III.C.)

2 |       Therefore, Defendant's Motion should be denied as to Plaintiff Dermer's claims

3 | under the unlawful, unfair, and fraudulent practices prongs of the UCL.

4 | **E.    Plaintiff Dermer's FAL Claim Is Legally Sufficient.**

5 |       Defendant's attack on Plaintiff Dermer's FAL claim mirrors its attack on her

6 | claim under the UCL's fraudulent practices prong discussed immediately above. First,

7 | Defendant asserts that Plaintiff Dermer has not adequately alleged specific misleading

8 | advertisements. That argument is immaterial because Plaintiff Dermer's claims are

9 | based on Defendant's fraudulent omissions, not any of its misrepresentations.

10 |       Second, Defendant contends that the FAL claim does not allege facts sufficient to

11 | plead actual reliance. That contention fails not only for the reasons set forth above, but

12 | also fails because Defendant has not established that an FAL claim requires a showing

13 | of actual reliance. The only case Defendant cites undermines its contention because the

14 | court did not hold that reliance is required for an FAL claim. *See Oestreicher*, 544 F.

15 | Supp. 2d at 973-74 (dismissing FAL claim where statements at issue were puffery or not

16 | false statements of fact); *see also Webb v. Carter's Inc.*, 272 F.R.D. 489, 503 (C.D. Cal.

17 | 2011) ("To be sure, the FAL allows recovery without proof of actual reliance.")

18 | **F.    The Second Amended Complaint States Valid Claims Under the Consumer**

19 |         **Protection Statutes of Washington and North Carolina.**

20 |       Defendant's sole argument in favor of dismissal of the consumer protection

21 | claims of Plaintiffs Mendoza and Carmichael is that they do not satisfy Rule 9(b)'s

22 | particularity requirement. That argument fails for the same reasons that Defendant's

23 | attack on Plaintiff Dermer's claims is unavailing. (*See* discussion, *supra* at III.B.)

24 | **G.    Plaintiff Dermer's Song-Beverly Consumer Warranty Act Claim Is Valid.**

25 |       Defendant contends that vertical privity bars Plaintiff Dermer's claim for breach

26 | of the implied warranty of merchantability under the Song-Beverly Act. Defendant

27 | seems to have confused a Song-Beverly Act claim with a claim under the California's

28 | Uniform Commercial Code ("U.C.C."), as California abolished the requirement of

1   privity in the Song-Beverly Act.  *See, e.g.*, *Dickerson v. Electrolux Home Prods.*, No.

2   CV 10-5163-R, 2011 U.S. Dist. LEXIS 26994, at *6 (C.D. Cal. Feb. 3, 2011); *In re*

3   *NVIDIA GPU Litig.*, No. 08-04312, 2009 U.S. Dist. LEXIS 108500, at *15 (N.D. Cal.

4   Nov. 19, 2009) ("The plain language of the Song-Beverly Act does not require vertical

5   contractual privity between a manufacturer and a consumer."); *Gusse v. Damon Corp.*,

6   470 F. Supp. 2d 1110, 1116 n.9 (C.D. Cal. 2007).

7        The only case Defendant cites is inapposite because the Court held that vertical

8   privity was required for the plaintiff's claim under California's U.C.C., but not his Song-

9   Beverly Act claim.  *See Annunziato v. eMachines, Inc.*, 402 F. Supp 2d 1133, 1141-42

10  (C.D. Cal. 2005) (dismissing Song-Beverly Act claim because plaintiff purchased

11  product at issue in Massachusetts and thus could not satisfy the Act's requirements).  As

12  such, lack of vertical privity does not bar Plaintiff Dermer's Song-Beverly Act claim.

13       Further, Plaintiffs have alleged circumstances showing that Defendant's time

14  limitation on its implied warranty of merchantability is unconscionable.  For example,

15  Plaintiff Dermer alleges: (1) "Defendant knew that the capacitors in the Samsung TVs

16  were defective at the time of sale or lease and would cause consumers to expend

17  excessive sums of money to have capacitors and/or power supply boards replaced

18  outside of the express warranty period . . . , but concealed that information from its

19  customers"; (2) "Defendant sold defective products without conspicuously informing

20  consumers about the defect in its manufacturer's warranties or otherwise"; (3)

21  "Defendant's written manufacturer's warranties . . . are consumer adhesion contracts";

22  (4) "Plaintiffs and the members of the Class had no meaningful choice in determining

23  those limitations"; (5) "a gross disparity in bargaining power existed between Defendant

24  on the one hand and Plaintiffs and the Class on the other, with Defendant maintaining

25  the superior bargaining position at all times"; (6) "the terms of Defendant's limited

26  manufacturer's warranties unreasonably favor Defendant over Plaintiffs and the Class";

27  and (7) "Defendant has carried out a scheme to deliberately cheat the large amount of

28  consumers that comprise the Class."  (FAC ¶ 66.)  Defendant's time limitation is thus

1   "grossly inadequate and insufficient to protect Plaintiffs and the other members of the
2   Class." (*Id.*)   Additionally, Defendant's assertion that Plaintiff Dermer has not
3   sufficiently alleged that Defendant knew of the defect before the point of sale fails for
4   the reasons set forth above. (*See* discussion, *supra* at Part III.B.)

5          Finally, Defendant's argument that Plaintiff Dermer's unconscionability claim is
6   defeated because she could have purchased the same type of product made by another
7   manufacturer has been rejected repeatedly by the United States Court of Appeals for the
8   Ninth Circuit , which has "consistently followed the courts that reject the notion that the
9   existence of 'marketplace alternatives' bars a finding of procedural unconscionability."
10  *Shroyer v. New Cingular Wireless Servs.*, 498 F.3d 976, 985 (9th Cir. 2007) (citation
11  omitted). "Thus, . . . a contract may be procedurally unconscionable under California
12  law when the party with substantially greater bargaining power presents a 'take-it-or-
13  leave it' contract to a customer—even if the customer has a meaningful choice as to
14  [market alternatives]." *Id.*   Besides, Defendant points to nothing in the Second
15  Amended Complaint that supports, let alone compels, the conclusion that Plaintiff
16  Dermer could have bought the same type of product made by another manufacturer
17  without the same type of time limitation on implied warranties.

18  **H.   Plaintiff Dermer's Consumer Protection Claims Are Not Barred by the**
19          **Applicable Statutes of Limitations.**

20          Plaintiff Dermer's CLRA, UCL, and FAL claims are not time-barred.
21  Defendant's argument ignores that the discovery rule and the tolling doctrine of
22  fraudulent concealment applies to those claims.

23          *1.     Plaintiff Dermer's Claims Were Timely Filed Under the Discovery Rule.*

24          The CLRA provides that actions "shall be commenced not more than three years
25  from the date of the commission" of a method, act or practice made unlawful by the act.
26  Cal. Civ. Code § 1783.  This statute of limitations runs "from the time a reasonable
27  person would have discovered the basis for a claim." *Mass. Mut. Life Ins. Co.*, 97 Cal.
28  App. 4th 1282, 1295 (2002); *see also Mitchell v. Skyline Homes*, No. CIV S-09-2241

KJM, 2010 U.S. Dist. LEXIS 105547, at *5-6 (S.D. Cal. Sept. 4, 2010) (applying discovery rule to CLRA claim); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1130-31 & n.16 (C.D. Cal. 2010) (same).  The discovery rule is also applicable to FAL claims.  *Burdick v. Union Sec. Ins. Co.*, No. CV 07-4028 ABC, 2009 U.S. Dist. LEXIS 121768, *32-33 (C.D. Cal. Dec. 9, 2009).

The doctrine also applies to Plaintiff Dermer's UCL claims.  Although California state courts have held otherwise, in *Karl Storz-Endoscopy-America, Inc. v. Surgical Techs., Inc.*, the Ninth Circuit held that the doctrine did not apply to the plaintiff's UCL claims.  285 F.3d 848, 857 (9th Cir. 2002).  "In 2007, however, the California Supreme Court and the Ninth Circuit indicated that whether the discovery rule applies to the UCL is an open question."  *Burdick*, 2009 U.S. Dist. LEXIS 121768, at *34 n.6 (citing *Grisham*, 40 Cal. 4th at 635 n.7; *Betz v. Trainer Wortham & Co.*, 236 Fed. App'x 253, 256 (9th Cir. 2007) ("It is an open question under California law whether the discovery rule applies to unfair business practices claims.")).

"The California Court of Appeal then issued *Broberg* [*v. The Guardian Life Insurance Co. of America*], which makes clear that the discovery rule does apply at least to circumstances similar to those here."  *Id.*; *see id.* at *34-35 (denying summary judgment on UCL claim based on application of discovery rule).  *Broberg* held: "At least in the context of unfair competition claims based on a defendant's allegedly deceptive marketing materials and sales practices, which is simply a different legal theory for **challenging fraudulent conduct** and **where the harm from the unfair conduct will not reasonably be discovered until a future date**, we believe the better view is that the time to file a section 17200 cause of action starts to run only when a reasonable person would have discovered the factual basis for a claim."  171 Cal. App. 4th 912, 920-921 (Cal. App. 2d Dist. 2009) (emphases added).  This action presents similar circumstances because it challenges fraudulent conduct where harm will not reasonably be discovered until later due to the capacitor defect's latent nature.

Similarly, in *Dean v. United of Omaha Life Insurance Co.*, the Court applied the

23

1   discovery rule to a UCL claim because it was substantively "analogous to a common law

2   action for fraud, for which the discovery rule is applicable by statute." 171 Cal. App. 4th

3   912, 921 (2009) (citing Cal. Code Civ. Proc. § 338(d)). The substance of Plaintiff

4   Dermer's UCL claim is also analogous to a common law action for fraud. (*See* Def.'s

5   Mem. at 5 (the "essence" of Plaintiffs' claims if that Defendant "engaged in fraud").)

6        "When a plaintiff reasonably should have discovered facts for purposes of the

7   accrual of a cause of action or application of the delayed discovery rule is generally a

8   question of fact, properly decided as a matter of law only if the evidence (or, in this

9   case, the allegations in the complaint and facts properly subject to judicial notice) can

10  support only one reasonable conclusion." *Broberg*, 171 Cal. App. 4th at 92.

11       Plaintiff Dermer purchased her Samsung TV in April 2006. (FAC ¶ 57.)

12  Approximately two years later, the capacitor defect began to manifest. (*Id.*) Plaintiff

13  had no reason to know of the capacitor defect prior to that point in time. (*See id.* ¶¶ 64-

14  65.) This action was filed on January 31, 2011, less than three years since the latent

15  capacitor defect began to manifest in her Samsung TV. (*See* Pls.' Compl. (Doc. 1).) As

16  the statute of limitations is three years for CLRA and FAL claims, and four years for

17  UCL claims, Plaintiff Dermer's claims under those statutes are not time barred.

18       *2.    **Defendant's Fraudulent Concealment Tolls the Statutes of Limitations.***

19       Even if the discovery rule does not apply to UCL claims like Plaintiff

20  Dermer's—which it does—the doctrine of fraudulent concealment applies. *See Yumul*,

21  733 F. Supp. 2d at 1132-33. "[W]hen the defendant is guilty of fraudulent concealment

22  of the cause of action the statute [of limitations] is deemed not to become operative

23  until the aggrieved party discovers the existence of the cause of action." *Unruh-Haxton*

24  *v. Regents of Univ. of Cal.*, 162 Cal. App. 4th 343, 367 (2008).

25       Defendant's argument that Plaintiff Dermer has not pleaded Defendant's

26  fraudulent concealment with the particularity requirement by Rule 9(b) fails for the

27  reasons set forth above. (*See* discussion, *supra* at Part III.B.) Defendant's omissions

28  constitute fraudulent concealment because Defendant owed its customers a duty to

24

1  disclose the capacitor defect.  Plaintiff Dermer also sufficiently pleads Defendant's
2  active concealment of the capacitor defect, including developing measured and selective
3  responses to customer complaints while concealing the defect from the general
4  customer base, as discussed more fully above.  (*See* discussion, *supra* at Part III.C.2.)

5       Lastly, Defendant argues that the complaints about problems caused by the
6  capacitor defect that started being posted on the Internet in 2005 are inconsistent with
7  Plaintiff Dermer's fraudulent concealment argument.  However, a review of those
8  complaints would have only revealed the "tip of the iceberg." *In re Toyota*, 2010 U.S.
9  Dist. LEXIS 142663, at *203; *see also Falk*, 496 F. Supp. 2d at 1097 ("It is true that
10  prospective purchasers, with access to the Internet, could have read the many
11  complaints about the failed speedometers . . . Some may have.  But GM is alleged to
12  have known a lot more about the defective speedometers, including information
13  unavailable to the public.  Many customers would not have performed an Internet
14  search before beginning a car search.  Nor were they required to do so.").  Plaintiff
15  Dermer sufficiently allege facts that were known and accessible to Defendant, but
16  which were not known or reasonably discoverable by Plaintiffs. *See id.*  (*See also* FAC
17  ¶ 34 (alleging knowledge of pre-release testing data, numerous complaints from
18  customers, and numerous reports received from retailers about customer complaints).

19  **IV.  CONCLUSION**
20       For all the foregoing reasons, Plaintiffs respectfully request that the Court deny
21  Defendant's Motion to Dismiss in its entirety.  Plaintiff alternatively requests leave to
22  amend her Complaint should the Court have concerns about whether she has pled a legal
23  basis entitling her to relief. *See Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

Plaintiffs' Opposition to Defendant's Motion to Dismiss First Amended Complaint

1  DATED:  July 11, 2011

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

Fletcher V. Trammell
BAILEY PERRIN BAILEY

William A. Levin
Timothy F. Pearce
LEVIN SIMES KAISER GORNICK, LLP

W. Craft Hughes
HUGHES ELLZEY, LLP

By: /s/ Fletcher V. Trammell
      Fletcher V. Trammell

Attorneys for Plaintiffs Ronnie Carmichael,
Kay Dermer, and Lambert Mendoza

Plaintiffs' Opposition to Defendant's Motion to Dismiss First Amended Complaint

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I certify that on July 11, 2011, I electronically filed the foregoing: PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to the following individuals who are CM/ECF participants:

Ekwan E. Rhow            eer@birdmarella.com

Thomas V. Reichert       tvr@birdmarella.com

David I. Hurwitz          dih@birdmarella.com

/s/Fletcher V. Trammell

Fletcher V. Trammell